IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

STEPHANY SWART, M.D.,

        Plaintiff,

v.                           //   CIVIL ACTION NO. 1:14CV10
                                      (Judge Keeley)

SURENDRA PAWAR, M.D., MONONGALIA
RADIOLOGY ASSOCIATES, P.C.,

        Defendants.

SURENDRA PAWAR, M.D., and MONONGALIA
RADIOLOGY ASSOCIATES, P.C.,

        Counter-Claimants,

v.

STEPHANY SWART, M.D.,

        Counter-Defendant.

SURENDRA PAWAR, M.D., and MONONGALIA
RADIOLOGY ASSOCIATES, P.C.,

        Third-Party Plaintiffs,

v.

ERIC D. JOHNSON, M.D., and
CYNTHIA JOHNSON,

        Third-Party Defendants.

ERIC D. JOHNSON, M.D., and
CYNTHIA JOHNSON,

        Counter-Claimants,

v.

SURENDRA PAWAR, M.D., and MONONGALIA
RADIOLOGY ASSOCIATES, P.C.,
        Counter-Defendants.

## SECOND MEMORANDUM OPINION AND ORDER

## I. INTRODUCTION

On November 19, 2015, the Court entered a Memorandum Opinion and Order (the "first memorandum opinion and order") on the parties' then pending cross motions for summary judgment. (Dkt. No. 162). The first memorandum opinion and order dismissed many of the parties' claims against one another, but it left for further proceedings Swart's claims against Pawar and MRA for breach of fiduciary duty and fraud, as well as Pawar's counterclaims against Swart for breach of fiduciary duty and fraud.[1]

On November 20, 2015, the Court held a final pre-trial conference with the parties. During that conference, the Court heard argument from the parties on the legal bases for both parties' remaining claims of breach of fiduciary duty and fraud. The Court questioned with doubt whether the parties had any such legal bases for their claims. Counsel for Pawar and MRA agreed with the Court that there was no basis for those claims[2] under

---

[1]Pawar and Monongalia Radiology Associates, P.C. ("MRA") had filed a third-party complaint against Cynthia and Eric Johnson, to which the Johnson's counterclaimed. The first memorandum opinion and order left those claims virtually intact, and the remaining claims therein are not involved with the issues presented here.

[2]Counsel for Pawar noted that, although they doubted the law provided Pawar any bases for the claims, they asserted them as a defensive action against Swart's already filed claims.

SECOND MEMORANDUM OPINION AND ORDER

Pennsylvania law.[3] Because the subject had not been previously addressed in the parties' filings, the Court directed them to submit supplementary briefing on the subject.

## II. BACKGROUND

The Court foregoes a full recitation of the factual and procedural details of the case, as those may be found in the Court's first memorandum opinion and order. (Dkt. No. 162 at 3-29). It does add, however, that the parties filed their respective supplemental briefs on the relevant legal issues on November 23, 2015. (Dkt. Nos. 164 and 166).

## A.    The Claims

Swart claims that Pawar breached his fiduciary duty by: (1) "fail[ing] to properly inform [her] of partnership matters, committ[ing] various acts, errors and/or omissions which constitute breach of fiduciary duty"; (2) "fail[ing] to properly maintain and preserve the assets of [MRA] for the benefit of those that are provided for in the operating agreement"; and (3) "fail[ing] to keep [her] apprised of the business dealings and decisions of [MRA]." (Dkt. No. 1-1 at 21).

Further Swart claims that Pawar committed fraud against her

_____

[3]The Court's first memorandum opinion and order determined that Pennsylvania law applied to claims relating to MRA because that was its state of incorporation. <u>See</u> Dkt. No. 162 at 33-37.

by: (1) failing to provide her corporate records; (2) submitting fraudulent expenses for reimbursement through MRA; (3) misrepresenting to her that both Monongalia General Hospital ("MGH") and Preston Memorial Hospital ("PMH") required him to receive a higher salary as medical director; (4) conducting meetings with MGH without her knowledge or consent; (5) falsely claiming she did not have all of her required Continuing Medical Education ("CME") credits; and (6) creating false patient complaints against her. (Dkt. No. 1-1 at 1-21).

For his part, in his counterclaim Pawar alleges that Swart breached her fiduciary duty by: (1) exhibiting poor work habits; (2) failing to maintain her required CME credits; (3) deliberately blocking Pawar's efforts to hire more doctors and improve the practice; (4) refusing to sign a revised shareholder agreement making Eric Johnson an equal shareholder; (5) collaborating with Johnson to subvert MRA's contract with MGH in hopes of securing it for themselves; and (6) making derogatory comments about Pawar to MGH staff. (Dkt. No. 10 at 25-30.

Further, Pawar counterclaims that Swart committed fraud because she: (1) misrepresented that "she would devote her time, efforts, skills and abilities to the practice group, including Pawar"; (2) "made [mis]representations to Pawar regarding her

4

education, abilities and her continuing medical education requirements"; (3) misrepresented that she would "cooperate with Pawar in the operation of the practice and support him in the practice" and (4) "[mis]represented that she would comply with the requirements necessary to service the needs of the agreement to be entered into with MGH."[4] (Dkt. No. 10 at 37).

## B.  Alleged Damages

Both Swart and Pawar allege that the other's actions caused MGH and PMH to terminate their contracts with MRA for failure to fulfill its contractual obligations. (Dkt. No. 1-1 at ; Dkt. no. 10 at 30). As a result, both parties seek the total combined amount they would have received as income under their respective employment contracts with MRA, as well as their anticipated shareholder disbursements.[5]

---

[4]Pawar also alleges that Swart misrepresented that she voluntarily left West Virginia University, when she was, in fact, terminated. (Dkt. No. 10 at 38). This portion of Pawar's fraud claim was addressed in the Court's first memorandum opinion and order and no further discussion of it is necessary.

[5]Swart's complaint claims she "has been damaged in an amount to be determined at trial" on both claims. (Dkt. No. 1-1 at 21-22). However, in the parties' joint pre-trial order, Swart assigned a value of $8,000,000 ($2,000,000 for each of the four lost years of MRA's contract) to her claim. (Dkt. No. 136 at 33). Pawar's counterclaim states that he "has been damaged and sustained damages in excess of $4,000,000.00" as a result of Swart's breach of fiduciary duty, and "actual damages to be proven at trial" as a result of her fraud. (Dkt. No. 10 at 30, 38).

**SECOND MEMORANDUM OPINION AND ORDER**

### III. APPLICABLE LAW

"[U]nder established Pennsylvania law, a shareholder does not have standing to institute a direct suit for 'a harm [that is] peculiar to the corporation and [that is] only [] indirectly injurious to [the] shareholder.'" <u>Hill v. Ofalt</u>, 85 A.3d 540, 548 (Pa. Super. 2014) (quoting <u>Reifsnyder v. Pgh. Outdoor Adver. Co.</u>, 405 Pa. 142 (1961)).[6] This is known as "[t]he derivative injury rule," which "states that a shareholder may not sue for personal injures that directly result from injuries to the corporation." <u>Clark Motor Co., Inc. v. Manufacturers and Traders Trust, Co.</u>, 2007 WL 2155528, at *3 (M.D.Pa. 2007) (citing <u>In re Kaplin</u>, 143 F.3d 807, 811-12 (3d Cir. 1998)). "This rule applies even if the corporation is a closely-held corporation. The rule is premised on

---

[6]<u>Hill</u> also cites "Hornbook law":

> The action is derivative if the gravamen of the complaint is injury to the corporation, or to the whole body of its stock or property without any severance or distribution among individual holders, or if it seeks to recover assets for the corporation or to prevent dissipation of its assets.... If damages to a shareholder result indirectly, as the result of an injury to the corporation, and not directly, the shareholder cannot sue as an individual.

<u>Hill</u>, 85 A.3d at 549 (citing <u>12B Fletcher Cyclopedia of the LAW of CORPORATIONS</u> § 5911 (2013); <u>see also</u> <u>ALI Principles of Corporate Governance</u> § 7.01(a) ("[a]n action in which the holder can prevail only by showing an injury or breach of duty to the corporation should be treated as a derivative action").

recognizing the separate legal existence of a corporation from its shareholders." Id. (citing In re Kaplan, 143 F.3d at 811-12).

In effect, "the derivative injury rule prevents [shareholders] from piercing the corporate veil in reverse in order to recover individually for the corporation's] losses." In re Kaplan, 143 F.3d at 812  "Therefore, a shareholder must plead injuries that were inflicted upon him individually rather than on the corporation to avoid the derivative injury rule." Clark Motor Co., Inc., 2007 WL 2155528, at *3  (citing In re Kaplan, 143 F.3d at 812). The injury pleaded "must be independent of any alleged injury to the corporation." Id. (emphasis added); see also Hvizdak v. U.S., 2015 WL 5098745, at *3 (W.D.Pa. Aug. 31, 2015) ("The injury must be something separate and distinct from the injury inflicted upon the corporation--something more than diminution in value of investments.") (citing multiple 3rd Cir. cases); In re Kaplan, 143 F.3d at 811-12. Moreover, "[t]o have standing to sue individually . . .the shareholder must be entitled to receive the benefit of any recovery." Id. (collecting cases).

In certain circumstances, however, "[s]ome courts also permit[] a cause of action in favor of the individual shareholder[] where the alleged wrong violates a duty owed directly to the shareholder. This exception to the derivative injury rule covers

dut[ies] owed to the individual independent of the person's status as a shareholder...." In re Ressler, 597 Fed.Appx. 131, 135-36 (3rd Cir. 2015). For example, in In re Kaplan, the court held that, although the plaintiff was a shareholder, he was entitled to sue the corporation for breach of a contract he signed with the corporation in his personal capacity. 143 F.3d at 811-12.[7]

## IV. DISCUSSION

Here, the injuries alleged by both Swart and Pawar against one another all derive from injuries that directly injured MRA. The gravamen of their alleged damages is that the other's actions resulted in the failure of MRA and the termination of its hospital contracts. The lost prospective contract value, and any accompanying profit, is a loss suffered directly by MRA. Further, any alleged lost wages, although affecting Pawar and Swart personally, were also lost income suffered directly by MRA as a result of the lost radiology contracts. The fact that those losses then run to Swart and Pawar as lost personal employment income does not change the fact that the losses still derive from losses suffered by MRA. Swart's and Pawar's alleged damages are not

_____

[7]This leaves the question of whether Swart or Pawar could sue MRA directly for breaching their employment contracts, which were signed in their individual capacity. The Court need not address that issue here, however, as neither Swart nor Pawar sued MRA for breach of contract.

"separate and distinct" those of from MRA.

Furthermore, Swart and Pawar would not be entitled to receive the benefit of any lost contract revenue personally. All monies derived from the hospital contracts belonged solely to MRA, the corporate entity. Only upon MRA's distribution of the proceeds of the contract as salaries or shareholder distributions would Swart's and Pawar's individual rights to those proceeds attach. Thus, they are subject to the derivative injury rule.

Accordingly, the Court **FINDS** that neither Swart nor Pawar have standing to bring their claims of breach of fiduciary duty and fraud against one another. Therefore, the Court **DISMISSES WITH PREJUDICE** Counts I and II of Swart's complaint, as well as Counts I and V of Pawar's counterclaim.

It is so **ORDERED.**

The Court directs the Clerk to transmit copies of this Memorandum Opinion and Order to counsel of record and to enter a separate judgment order .

DATED: December 4, 2015

/s/ Irene M. Keeley
IRENE M. KEELEY
UNITED STATES DISTRICT JUDGE